952 P.2d 1249

STATE of Idaho, Plaintiff–Respondent,

v.

Samuel Rocha, Defendant,

and

ABRACADABRA BAIL BONDS, Real Party in Interest–Appellant.

No. 22498.

Court of Appeals of Idaho.

Jan. 7, 1998.

Rehearing Denied Jan. 7, 1998.

Review Denied March 3, 1998.

Lojek & Strother, Chartered, Boise, for real party in interest-appellant. Jeffrey A. Strother argued.

Alan G. Lance, Attorney General, Craig G. Bledsoe, Deputy Attorney General, Boise, for plaintiff-respondent. Craig G. Bledsoe argued.

PERRY, Judge.

In this appeal, Abracadabra Bail Bonds alleges several claims of error by the district court in the proceedings below. First, Abracadabra asserts that the district court erred in denying its motion for exoneration of a bail bond. Second, Abracadabra contends that the district court erred in finding it in contempt and in revoking Abracadabra's privilege to conduct business in the Third Judicial District. Finally, Abracadabra claims that the district court erred in sanctioning Abracadabra's attorney.[1] We affirm the district court's order denying exoneration. We reverse the district court's holding Abracada-

---

1. We acknowledge for the record that counsel on appeal did not represent Abracadabra before the district court.

bra in contempt, but we decline to address the imposition of sanctions against Abracadabra's attorney below.

# I.

## BACKGROUND

A criminal complaint was filed September 26, 1994, charging Samuel Rocha with one count of felony delivery of a controlled substance. Rocha's preliminary hearing was set for October 4, 1994, and bail was set. On September 28, 1994, Rocha was released on a $50,000 bond issued by Abracadabra.

On October 4, 1994, at the time scheduled for the preliminary hearing, the magistrate and counsel for Rocha were advised by the prosecutor that a superseding indictment had been issued on September 29, 1994, charging Rocha with one count of delivery of a controlled substance and one count of trafficking in methamphetamine. The magistrate therefore ordered Rocha's case continued for arraignment before the district court on November 4, 1994.

Rocha was not present at the time scheduled for the preliminary hearing. The magistrate was advised by the deputy court clerk that Rocha was in custody on an unrelated matter and was not transported to court. Therefore, the magistrate did not order forfeiture of the bond. Rocha failed to appear at his arraignment on November 4, 1994. The district court ordered forfeiture of the bond and issued a bench warrant for Rocha's arrest. On November 4, 1994, the deputy court clerk sent notice to Abracadabra indicating that the bond was being forfeited pursuant to I.C. § 19–2927.

On December 6, 1994, Abracadabra moved to exonerate its bond. The district court denied Abracadabra's motion on December 14, 1994. On December 29, 1994, Abracadabra moved for reconsideration. On February 24, 1995, Abracadabra moved to extend the time on the bond forfeiture. In this motion, Abracadabra requested that its December 29, 1994, motion for reconsideration be held in abeyance if the motion for extension was granted. The district court granted this motion, extending the time for forfeiture until May 1, 1995. On May 1, 1995, Abracadabra

again moved to extend the time on the bond forfeiture. The district court denied the motion, and the deputy court clerk sent another notice to Abracadabra indicating that the bond was forfeited pursuant to I.C. § 19–2927. On August 2, 1995, Abracadabra moved to exonerate its bond, asserting the same arguments raised in its December 6, 1994, motion for exoneration. The district court scheduled a hearing, but on August 23, 1995, denied Abracadabra's motion without conducting the hearing. The district court also sanctioned Abracadabra's attorney in the amount of $500 for filing a repetitive motion. Abracadabra timely appealed this order.

On August 30, 1995, the state moved for a distribution of the bond forfeiture proceeds. The district court granted the state's motion. When Abracadabra failed to pay the forfeited bond, the state moved for an order to show cause why Abracadabra should not be held in contempt. After a hearing, the district court found Abracadabra in contempt for failing to pay the forfeited bond, and revoked Abracadabra's privilege to do business in the Third Judicial District. The district court also ordered Abracadabra to pay the $50,000 bond plus interest. Abracadabra moved for reconsideration which was denied by the district court. Abracadabra then filed an amended notice of appeal to include this order.

# II.

## DISCUSSION

### A. Exoneration

Abracadabra asserts that because the magistrate failed to forfeit the bond when Rocha did not appear at the time of his preliminary hearing on October 4, 1994, the district court was precluded from forfeiting Rocha's bond on November 4, 1994, when Rocha failed to appear for his arraignment. Abracadabra further contends that because it did not timely receive written notice of the forfeiture, which, according to Abracadabra, should have occurred within five days of October 4, 1994, the district court erred in denying Abracadabra's motion to exonerate its bail bond.

■ A bail bond agreement is a surety-ship contract between the state on one side and an accused and his or her surety on the other side, whereby the surety guarantees the appearance of an accused. *United States v. Vaccaro,* 51 F.3d 189, 193 (9th Cir.1995); *State v. Ericksons,* 106 N.M. 567, 746 P.2d 1099, 1099 (1987); 8 C.J.S. *Bail* § 4 (1988); 8 AM. JUR. 2D *Bail and Recognizance* § 1 (1980); *see also People v. Tyler,* 797 P.2d 22, 24–25 (Colo.1990). The extent of the surety's undertaking is determined by the bond agreement and is subject to the rules of contract law and suretyship. *Vaccaro,* 51 F.3d at 193; *Tyler,* 797 P.2d at 24; *Ericksons,* 746 P.2d at 1099–100. Because it is a contract, existing law becomes part of the contract, as though the contract contains an express provision to that effect. *Robinson v. Joint Sch. Dist. # 150,* 100 Idaho 263, 265, 596 P.2d 436, 438 (1979) (extant law is written into and made part of every contract); *Rodriquez v. People,* 191 Colo. 540, 554 P.2d 291, 293 (1976) (bail statutes implicitly constitute part of the suretyship contract).

Idaho Code Section 19–2927 and Idaho Criminal Rule 46 govern bail forfeiture and exoneration. Idaho Code Section 19–2927, prior to its 1996 amendment, stated, in part:

If, without sufficient excuse, the defendant neglects to appear for arraignment or for trial or judgment, or upon any other occasion when his presence in court may be lawfully required, or to surrender himself in execution of the judgment, the court must direct the fact to be entered upon its minutes and the undertaking of bail, or the money deposited instead of bail, as the case may be, is thereupon declared forfeited. The clerk shall mail written notice within five (5) days of the forfeiture for failure to appear to the last known address of the person posting the undertaking of bail. A failure to give timely notice shall exonerate the bail or undertaking. If at any time within ninety (90) days after such entry in the minutes, the defendant appears and satisfactorily excuses his neglect, the court may direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just.

If within ninety (90) days of the date of forfeiture, a person, other than the defendant, who has provided bail for the defendant, brings the defendant before the court, the court shall direct that the forfeiture of the undertaking or deposit be discharged.

■ Idaho Criminal Rule 46, prior to its 1995 and 1996 revisions, stated, in part:

(e) Forfeiture and enforcement of bail bond. The court which set the amount of a bail bond may order the forfeiture and enforcement of the bail bond in any of the following manners:

(1) In the event th[at] a person fails to appear before the court at the time required as a condition to bail, and the court finds that said failure to appear is without sufficient excuse, or where no evidence is presented which would provide sufficient excuse[, t]he court may ex parte forfeit the bail or bail bond and may issue a bench warrant or the court may ex parte forfeit the bail or bail bond and delay the issuance of a bench warrant for 90 days.

. . . .

(g) Exoneration of bail. When the conditions of bail have been satisfied, or if the clerk fails to mail a written notice to the person posting the undertaking of the bail within five (5) days of the order of forfeiture, the court shall then discharge the bail, exonerate sureties, and release any cash bonds or property deposited with the court. If the defendant appears or is brought before the court within ninety (90) days after the order forfeiting bail, the court shall rescind the order of forfeiture and shall exonerate the bond.

As provided in I.C. § 19–2927 and Rule 46(e)(1), the trial court's decision to forfeit a defendant's bail depends on whether there was a sufficient excuse for the defendant's failure to appear. Whether a sufficient excuse has been presented is within the sound discretion of the trial court. *State v. Fry,* 128 Idaho 50, 54, 910 P.2d 164, 168 (Ct.App. 1994). When a trial court's discretionary decision in a criminal case is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as

one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

A similar issue was recently presented before the California Court of Appeals in *County of Los Angeles v. Ranger Ins. Co.*, 48 Cal.App.4th 992, 56 Cal.Rptr.2d 25 (1996).[2] In *Ranger*, Mohammed Habibullah had been charged with several sex-related offenses and was released on an appearance bond secured by Ranger Insurance Company. At the time of his trial, Habibullah failed to appear. Several of his relatives advised the trial court that Habibullah had died and presented his death certificate to the trial court. The trial court did not forfeit Habibullah's bail, but continued the matter to determine whether Habibullah was, in fact, dead. Subsequently, it was determined that Habibullah was alive and the death certificate was not legitimate. At this time, the trial court forfeited Habibullah's bail, and Ranger was notified of the forfeiture.

Ranger moved to vacate the forfeiture which was denied. On appeal, Ranger argued that because the trial court failed to forfeit Habibullah's bail when he did not appear at the time set for trial, the trial court lost jurisdiction to later declare a forfeiture. The California Court of Appeals affirmed the trial court and concluded that, because there was a sufficient excuse explaining Habibullah's nonappearance, the trial court acted reasonably and within its discretion in continuing the matter and not forfeiting bail. *Ranger*, 56 Cal.Rptr.2d at 27. As a basis for its holding, the court stated:

"[T]he trial court may exercise its sound discretion in determining whether a defendant's failure to appear was 'without sufficient excuse.' ... [When] the court was confronted with reassurances ... which apparently suggested to the court that the failure to appear was excusable ... it cannot be said that the acceptance of the excuse constituted an abuse of discretion. No forfeiture was thus required."

*Id., quoting People v. United Bonding Ins. Co.*, 5 Cal.3d 898, 98 Cal.Rptr. 57, 61–62, 489 P.2d 1385, 1389–90 (1971).

Our first inquiry in the instant case is to decide if the magistrate abused its discretion when determining whether Rocha was without sufficient excuse for his nonappearance at the time of the October 4, 1994, preliminary hearing. At this hearing, the deputy court clerk notified the magistrate that Rocha was in custody. In the court minutes of that hearing, it is stated that Rocha "was in custody on an unrelated matter but was not brought up to Court." Apparently, the magistrate determined that the preliminary hearing was unnecessary because of the superseding indictment, and Rocha was never brought into the court.[3] The magistrate, in exercising its discretion, did not forfeit Rocha's bond, and the case was continued for Rocha's arraignment on November 4, 1994. Although it was determined, after the district court forfeited Rocha's bond on November 4, 1994, that Rocha was apparently not in custody at the time of the preliminary hearing, we conclude that, given the circumstances confronting the magistrate at the time of the preliminary hearing, the magistrate had reason to believe that a sufficient excuse existed for Rocha's nonappearance. Accordingly, we hold that the magistrate did not abuse its discretion in failing to forfeit Rocha's bond on October 4, 1994. The magistrate's decision declining to forfeit Rocha's bail on October 4, 1994, was not only within its discretion, but was consis-

**2.** California's penal code has a bond forfeiture provision that is substantively identical to I.C. § 19–2927, and reads, in part:

(a) A court shall declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear for any of the following:
(1) Arraignment.
(2) Trial.
(3) Judgment.
(4) Any other occasion prior to the pronouncement of judgment if the defendant's presence in court is lawfully required.
CAL. PENAL CODE § 1305 (West 1996).

**3.** The transcript also indicates that defense counsel had intended to waive Rocha's preliminary hearing.

tent with the policy disfavoring forfeitures. *See also Ranger,* 56 Cal.Rptr.2d at 27.

Next, we inquire into whether the district court was precluded from forfeiting Rocha's bond on November 4, 1994. As we previously held, the magistrate did not abuse its discretion in failing to forfeit Rocha's bond on October 4, 1994. Abracadabra cites no authority that holds that the magistrate's continuance of the case for arraignment without forfeiting Rocha's bond affected the district court's power to later forfeit Rocha's bond. We conclude that when Rocha did not appear for his arraignment on November 4, 1994, the district court remained authorized pursuant to I.C. § 19–2927 to forfeit Rocha's bond.

Finally, we must decide whether the district court erred in denying Abracadabra's motion to exonerate its bail bond. Under I.C. § 19–2927 and I.C.R. 46(g), a court is required to exonerate a surety's bail bond if the surety is not sent written notice within five days of the order forfeiting a defendant's bond. In this case, Abracadabra asserts that this five-day time period commenced October 4, 1994, when Rocha first failed to appear at the preliminary hearing. We disagree. As we have held, the magistrate was presented with a sufficient excuse for Rocha's nonappearance on October 4, 1994. Consequently, Rocha's bond was not forfeited, and it was unnecessary to send a forfeiture notice to Abracadabra. After Rocha failed to appear without sufficient excuse on November 4, 1994, and the district court forfeited Rocha's bond, Abracadabra was entitled to, and was sent, timely notice of the forfeiture. Accordingly, we hold that the district court did not err in denying Abracadabra's motion to exonerate its bail bond.

## B. Enforcement of Bail Bond

Abracadabra claims the district court abused its discretion in finding Abracadabra

in contempt. Abracadabra asserts that because the forfeited bond could only be enforced by a separate civil action pursuant to I.C. § 19–2928,[4] the district court had no basis to order Abracadabra to pay the forfeited bond and to find Abracadabra in contempt for violating that order. Abracadabra also asserts that the district court never ordered Abracadabra, before finding it to be in contempt, to pay the forfeited bond. Based on our holding, however, we need not address whether the district court ordered Abracadabra to pay the forfeited bond.

The state raises several procedural challenges to Abracadabra's claim of error. First, the state asserts that the contempt order was not certified as a final order under I.R.C.P. 54(b) as required by I.A.R. 11(a)(4). The purpose of Rule 54(b) is to avoid piecemeal litigation and appeals by precluding appeals from certain interlocutory orders unless certified as a final judgment. *See Long v. Goodyear Tire & Rubber Co.,* 100 Idaho 183, 184, 595 P.2d 717, 718 (1979); *Sivak v. State,* 119 Idaho 211, 213, 804 P.2d 940, 942 (Ct.App.1991); *In Re Contempt of Reeves,* 112 Idaho 574, 578, 733 P.2d 795, 799 (Ct. App.1987). The district court's December 20, 1995, contempt order was not certified as a final judgment. However, Abracadabra timely appealed under I.A.R. 11(a)(1) from the district court's August 23, 1995, order denying exoneration.[5] An appeal permissible under I.A.R. 11(a)(1) is deemed to include any interlocutory orders entered before or after the order appealed from. I.A.R. 17(e)(1); *see Sivak,* 119 Idaho at 213, 804 P.2d at 942. Thus, this Court will review Abracadabra's challenge of the contempt order.

The state's second procedural challenge is that, because the contempt order was purged after Abracadabra paid the bond and its right to do business in the Third

---

4. Idaho Code Section 19–2928 provides:
 If the forfeiture is not discharged, as provided in [I.C. § 19–2927], the prosecuting attorney may, at any time after ninety (90) days from the entry upon the minutes, as provided in [I.C. § 19–2927], proceed by action in the name of the county, against the bail upon their undertaking.

5. A trial court's order denying exoneration of a bail bond is a final order under I.A.R. 11(a)(1). *State v. Rupp,* 123 Idaho 1, 843 P.2d 151 (1992); *State v. Fedder,* 76 Idaho 535, 285 P.2d 802 (1955).

Judicial District was reinstated, this issue is moot and this Court should not address it. "The generally accepted test for determination whether satisfaction of a judgment cuts off the payor's right to appeal is whether the satisfaction was voluntary. If the satisfaction was involuntary, the appeal remains viable." *International Business Machines Corp. v. Lawhorn,* 106 Idaho 194, 196, 677 P.2d 507, 509 (Ct.App.1984) (citation omitted). We hold that under the circumstances of this case the payment of the bond pursuant to the contempt order was not voluntary, and Abracadabra's appeal remained viable.

### 1. Contempt

 The issue we now address is whether the district court had the authority to enforce Abracadabra's forfeited bail bond under the penalty of contempt. Trial courts are vested with the judicial power of contempt to vindicate their jurisdiction and proper function. *Marks v. Vehlow,* 105 Idaho 560, 566, 671 P.2d 473, 479 (1983). The contempt power has its source in the Idaho Constitution, *Id.* Const. art. V, § 2, and the common law. *Vehlow,* 105 Idaho at 566, 671 P.2d at 479; *McDougall v. Sheridan,* 23 Idaho 191, 128 P. 954 (1913) (inherent contempt power). This power is also recognized by statute. *Vehlow,* 105 Idaho at 566, 671 P.2d at 479. As provided in I.C. § 1–1603(4), every court has the power to compel obedience to its orders. *See also* I.C. § 1–1901 (every judicial officer has the power to compel obedience to its lawful orders); I.C. § 1–1902 ("For the effectual exercise of the powers conferred under [I.C. § 1–1901], a judicial officer may punish for contempt."); I.C. §§ 7–601 to –614 (Contempts). The contempt power, however, is generally not available for the enforcement of contracts between parties and money judgments. *See Id.* Const. art. I, § 15; *Annest v. Conrad–Annest, Inc.,* 107 Idaho 468, 470, 690 P.2d 923, 925 (1984); *Phillips v. District Court of Fifth Judicial District,* 95 Idaho 404, 406, 509 P.2d 1325, 1327 (1973) (contracts between parties are subject only to contractual remedies). *But see, e.g., Phillips,* 95 Idaho 404, 509 P.2d 1325 (property settlement provisions of divorce decree are enforceable through the court's contempt power); *Application of*

*Martin,* 76 Idaho 179, 188, 279 P.2d 873, 878 (1955) (contempt power is available to enforce support obligations).

 Abracadabra's undertaking was based on a written contract whereby Abracadabra agreed to guarantee the appearance of Rocha in court. When Rocha failed to appear at his arraignment and his bond was ordered forfeited upon proper notice by the district court, Abracadabra was obligated under its suretyship contract to pay the bond. Abracadabra's contractual obligation to pay the forfeited bond was a civil liability, *see State v. Overby,* 90 Idaho 41, 46, 408 P.2d 155, 157 (1965), and was enforceable by the prosecuting attorney in a separate civil action, I.C. § 19–2928. Consequently, the district court was without authority to enforce the payment of the bond forfeiture under the penalty of contempt. *See Id.* Const. art. I, § 15; *Annest,* 107 Idaho 468, 690 P.2d 923; *Phillips,* 95 Idaho 404, 509 P.2d 1325. *See also People v. Person,* 44 Mich.App. 630, 205 N.W.2d 610, 611 (1973) ("The exercise of contempt power is not the proper method to secure payment from sureties" on a forfeited bail bond). Thus, the district court's December 20, 1995, order finding Abracadabra in contempt and revoking its privilege to do business in the Third Judicial District must be reversed.

Our holding is not intended to address other methods that trial courts may use to deal with bonding companies which refuse to honor their obligations. The administrative district judges typically maintain a register of approved bonding companies who do business in their respective judicial districts. If a bonding company refuses to honor its contractual obligation, it is a common practice for the administrative district judges to remove the bonding company from the approval register, thus prohibiting the bonding company from doing business in their judicial districts. That practice, as a part of the administrative district judges' power to manage their judicial districts, *see generally* I.C.R. 46; M.C.R. 13(c)(3), is not at issue in this appeal.

### 2. Idaho Code Section 19–2928 and the writ of *scire facias*

As we have concluded, I.C. § 19–2928 authorizes the state to enforce a bond forfeiture through a separate civil action. The question remains as to whether the state can enforce a bond forfeiture without the necessity of an independent action. Historically, this procedure was accomplished through the common law writ of *scire facias*. 8 C.J.S. *BAIL* § 180 (1988); 8 AM. JUR. 2D *BAIL AND RECOGNIZANCE* § 150 (1980). A writ of *scire facias* is directed to the bonding company and "orders them to show cause why the judgment of forfeiture should not be made absolute, and why execution should not issue in favor of the state." 8 AM. JUR. 2D *BAIL AND RECOGNIZANCE* § 154 (1980) (footnote omitted). In the vast majority of jurisdictions, the writ of *scire facias* has been either codified or superseded by provisions providing similar remedies for the enforcement of bail bond forfeitures. For example, Federal Criminal Rule 46(e)(3) authorizes the enforcement of a bail bond forfeiture "on motion without the necessity of an independent action." *See also* CAL. PENAL CODE § 1306 (West Supp. 1997); MO. REV. STAT. § 544.640 (1994); NEV. REV. STAT. § 178.514 (1997); OR. REV. STAT. § 135.280(3) (1995); UTAH CODE ANN. § 77–20a–2 (1995); WYO. C.R. 46(e)(3).

Idaho has abolished the writ of *scire facias*. I.C. § 6–601. Idaho, however, has authorized the enforcement of a surety's obligation by motion, but in areas not including bail bonds. *See* I.R.C.P. 65(c) (Where security has been given for an injunction or restraining order, the surety's liability "may be enforced on motion without the necessity of an independent action."); I.C. § 45–523 (Where a bond is entered to release a lien on real property, the surety's "liability may be enforced on motion without the necessity of an independent action."). The functions of the writ of *scire facias* are also served by the provisions of I.C. § 11–105 (execution after five years) and I.C. § 11–312 (failure of title—revival of judgment).

In addition to I.C. § 19–2928, Idaho Criminal Rule 46 governs bail bond forfeiture and enforcement. Rule 46 is silent, however, with respect to enforcing a bond forfeiture without the necessity of an independent action. This was not always the case. In 1979, in a tentative final draft of the Idaho Criminal Rules, Rule 46(e)(5) provided:

> When there has been forfeiture of a corporate surety bail bond, which has not been set aside, the court may upon motion by the prosecuting attorney enter a judgment of default and execution may issue thereon. By entering into a bond the corporate surety submits itself to the jurisdiction of the court in which the bond was deposited and irrevocably appoints the clerk of such court as its agent upon whom any papers affecting its liability may be served. *The corporate surety liability may be enforced upon motion without the necessity of an independent action.* The motion and such notice of the motion as the court prescribes may be served upon the clerk of that court, who shall forthwith mail copies to the corporate surety at its last known address.

(emphasis added). This section was deleted from the rule prior to its adoption. Rule 46 has been amended four times since it was adopted, but none of those amendments impact the issue presented in this case. Therefore, there is no provision in the Idaho Code or the Idaho Criminal Rules authorizing the enforcement of a bail bond forfeiture without the necessity of an independent action. Accordingly, once proper notice is given and a surety fails to remit the forfeited bond, the prosecuting attorney may proceed under I.C. § 19–2928 for enforcement of the forfeited bond.

### C. Fining Abracadabra's Attorney

Abracadabra claims the district court erred in fining Abracadabra's attorney for filing repetitive motions. The state asserts that because the district court's order fining Abracadabra's attorney was personal to the attorney, Abracadabra is not entitled to appeal this issue because Abracadabra was not aggrieved by the district court's order. We agree. Abracadabra has not established that it is an aggrieved party as required

under I.A.R. 4.[6] Thus, we will not address this issue.

## III.

### CONCLUSION

We hold that the district court did not err in denying Abracadabra's motion for exoneration. We hold that because Abracadabra's contractual liability to pay the forfeited bond was a civil liability, and enforceable by the prosecuting attorney in a separate civil action, the district court was without authority to enforce the payment of the bond forfeiture under the penalty of contempt. Thus, we conclude that the district court's order finding Abracadabra in contempt and revoking its privilege to do business in the Third Judicial District must be reversed. We do not address whether the district court erred in sanctioning Abracadabra's attorney because Abracadabra has not established that it is an aggrieved party as required under I.A.R. 4.

The order denying Abracadabra's motion for exoneration is affirmed, and the order finding Abracadabra in contempt is reversed. No costs or attorney fees are awarded to either party on appeal.

LANSING, C.J., and WALTERS, Acting J., concur.

---

6. Idaho Appellate Rule 4 provides:
 Persons who may appeal.—Any party aggrieved by an appealable judgment, order or decree, as defined in these rules, of a district court ... may appeal such decision to the Supreme Court as provided in these rules.