## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 52554-2024

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | |
| Plaintiff-Respondent, ) | Boise, February 2026 Term |
| ) | |
| v. ) | Opinion Filed: April 6, 2026 |
| ) | |
| RILEE ANN LUTZ, ) | Melanie Gagnepain, Clerk |
| ) | |
| Defendant-Appellant. ) | |
| ) | |
| and ) | |
| ) | |
| BART HESLINGTON, Sheriff, Bear ) | |
| Lake County, ) | |
| ) | |
| Real Party in Interest- ) | |
| Respondent. ) | |
| _____ ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bear Lake County. Cody L. Brower, District Judge.

The second amended judgment of the district court is affirmed.

Beckett Law Firm, Kuna, attorneys for Appellant, Rilee Ann Lutz. Kristian Beckett argued.

Hall Angell & Associates, Idaho Falls, attorneys for Real Party in Interest–Respondent. Sam L. Angell argued.

_____

BEVAN, Chief Justice.

This appeal asks us to determine whether a criminal defendant may independently initiate nonsummary contempt proceedings against a law enforcement officer under Idaho Criminal Rule 42 and Idaho Code section 7-601. Appellant Rilee Ann Lutz filed a motion for nonsummary contempt against Bear Lake County Sheriff Bart Heslington, alleging that he knowingly submitted a false supplemental police report during the investigation that led to her prosecution. The district court dismissed the motion, concluding that it lacked subject matter jurisdiction because only a prosecuting attorney may initiate contempt charges in a criminal case. The court also determined,

in the alternative, that Heslington's alleged conduct did not constitute contempt under section 7-601. Lutz appeals, asserting that the district court misinterpreted Rule 42 and Idaho's contempt statutes. For the reasons below, we affirm the district court's decision.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.  Factual Background**

Rilee Ann Lutz was employed as a softball coach at Bear Lake High School in 2022. On September 20, 2022, Sheriff Bart Heslington was contacted by a school counselor who reported that a student had alleged Lutz was involved in a sexual relationship with another student. Heslington had previously received a similar tip in June 2022 but did not initiate an investigation at that time because the information was not sufficiently specific.

On September 22, 2022, Heslington interviewed the student at her apartment, where she admitted having a romantic and sexual relationship with Lutz, some of which occurred before she turned eighteen years old. Later that day, Heslington conducted a second interview with the student and her mother at their family home, during which the student again stated that she and Lutz had sexual contact when she was seventeen years old. Heslington later interviewed Lutz, who acknowledged having a relationship with the student but maintained that any physical contact occurred after the student's eighteenth birthday.

On January 10, 2023, Heslington filed his investigation report concluding that Lutz had committed sexual battery of a minor child sixteen or seventeen years of age under Idaho Code section 18-1508A. Heslington supplemented his report on February 17, 2023, reaffirming his finding of probable cause. A warrant was issued for Lutz's arrest in March 2023, and she was arrested a few days later. Following a preliminary hearing, Lutz pleaded not guilty in Bear Lake County District Court.

Prior to trial, Lutz asserted as an affirmative defense that Heslington's investigation was tainted "because the only evidence which the State [could] hope to present was obtained by the unlawful intimidation and coercion of [the student] by Sheriff Heslington." Lutz also alleged that Sheriff Heslington had harassed the student. Thereafter, Lutz issued a subpoena to Heslington for investigative records that had not been disclosed in discovery. In response, the State produced a supplemental report dated June 28, 2023, wherein Heslington stated that he had spoken with the Bear Lake County Prosecutor between his two interviews with the student and had been advised to inform the student's parents of the alleged sexual contact with Lutz.

Lutz later obtained Heslington's phone records and body-worn camera footage, which she alleged disproved the statements in the supplemental report. Specifically, Lutz alleged that the phone logs reflected no calls between the conclusion of the first interview at 2:52 p.m. and the start of the second interview at 3:43 p.m. on September 22, 2022.

## B. Procedural Background.

On June 6, 2024, Lutz filed a motion for nonsummary contempt proceedings against Heslington under Idaho Criminal Rule 42(c)(2), supported by the affidavit of counsel Kristian Beckett and accompanying exhibits. Lutz alleged that Heslington's false statements in his June 28, 2023, supplemental report constituted "misbehavior in office" under Idaho Code section 7-601(3) and "[d]eceit or abuse of the process" under section 7-601(4).

On August 1, 2024, the district court held an admit-deny hearing on Lutz's motion. Sheriff Heslington, represented by counsel, denied the allegations and the court scheduled further proceedings for September 5, 2024. On August 22, 2024, Heslington moved to dismiss the contempt proceedings, arguing that Lutz lacked standing and that the court lacked jurisdiction because only a prosecuting attorney could initiate contempt proceedings under Idaho Criminal Rule 42. Lutz simultaneously filed a memorandum in support of her motion for nonsummary contempt, asserting that Rule 42 allows any "person or legal entity" to serve as petitioner and that restricting contempt to prosecutors created an untenable conflict of interest.

Following briefing and oral argument, the district court granted Heslington's motion to dismiss, entered a judgment of dismissal for nonsummary contempt, and awarded attorney fees to Heslington. An amended judgment was entered shortly thereafter, followed by a second amended judgment on December 11, 2024. Lutz was ultimately acquitted of all criminal charges at trial, and the district court entered the judgment of acquittal in January 2025. Lutz now appeals the dismissal of her contempt motion.[1]

## II. ISSUES ON APPEAL

1. Whether the district court erred in determining that Lutz did not establish probable cause for contempt.

2. Whether the district court erred by dismissing Lutz's motion for nonsummary contempt for lack of subject matter jurisdiction in a criminal case.

---

[1] The State is a respondent in this appeal but notified this Court that it would not appear or participate in the appeal and would not file a respondent's brief.

3. Whether the district court properly awarded attorney fees to Heslington as the prevailing party.

4. Whether Heslington is entitled to attorney fees on appeal.

## III. STANDARDS OF REVIEW

This Court "has free review over questions of law, including issues of jurisdiction and statutory interpretation." *Allen v. Campbell*, 169 Idaho 613, 616, 499 P.3d 1103, 1106 (2021) (citations omitted). "[T]he abuse of discretion standard applies to the district court's decision to award attorney fees." *Severinsen v. Tueller*, 174 Idaho 669, 674, 559 P.3d 771, 776 (2024) (citing *Knudsen v. J.R. Simplot Co.*, 168 Idaho 256, 265, 483 P.3d 313, 322 (2021)). When reviewing a trial court's decision for an abuse of discretion, this Court analyzes "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Id.* at 674–75, 559 P.3d at 776–77 (alteration in original) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## IV. ANALYSIS

### A. The district court correctly denied Lutz's motion for contempt because she did not establish probable cause.

We will address the merits of Lutz's argument before addressing the jurisdictional issue. The district court concluded that Lutz's contempt motion against Heslington should be denied because it lacked probable cause. Lutz maintains that nonsummary contempt proceedings under Rule 42 are not criminal in nature and, therefore, do not require a probable cause determination. We disagree. Lutz sought to impose an unconditional sanction against Heslington (a fine or jail). Accordingly, the proceeding sounded in criminal contempt rather than civil contempt.

This distinction controls our analysis. When a contempt sanction is unconditional and punitive, the proceeding is criminal in nature, and the protections attendant to criminal process apply. *See Camp v. E. Fork Ditch Co.*, 137 Idaho 850, 863, 55 P.3d 304, 317 (2002) (quoting *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 633 (1988)). A conditional sanction, by contrast,

> is civil because it is specifically designed to compel the doing of some act. "One who is fined, unless by a day certain he [does the act ordered], has it in his power to avoid any penalty. And those who are imprisoned until they obey the order, 'carry the keys of their prison in their own pockets.'"

4

*Id.* (alteration in original) (quoting *Hicks*, 485 U.S. at 633). Here, Heslington would have no opportunity to purge the contempt because the alleged misconduct—submitting a false report— could not be undone. Therefore, the sanction sought was punitive and criminal in nature, making a probable cause determination necessary before the proceeding could go forward. Thus, we conclude that the court did not err in ruling that the record failed to establish probable cause to proceed against Heslington.

Because criminal contempt seeks to punish a completed act and vindicate the authority of the court, it must conform to the same constitutional guarantees applicable to any other criminal prosecution. *Id.* at 860–61, 55 P.3d at 314–15. Those protections include notice that criminal contempt sanctions are sought, the right to counsel, the right to compulsory process and cross-examination, the privilege against self-incrimination, and the requirement that guilt be proved beyond a reasonable doubt. *Id.*; *see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826 (1994) ("Criminal contempt is a crime in the ordinary sense, and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." (citation modified)); *Beck v. Elmore Cnty. Magis. Ct. (Re: Petition for Writ of Prohibition)*, 168 Idaho 909, 928, 489 P.3d 820, 839 (2021) (recognizing that nonsummary contempt seeking a punitive sanction constitutes a criminal offense subject to the Idaho Criminal Rules). Collectively, these authorities establish that nonsummary criminal contempt must be initiated and prosecuted with the same procedural safeguards applicable to other criminal offenses. One such safeguard is the requirement that criminal charges rest on a factual showing sufficient to establish probable cause.

Although no Idaho case has expressly held that the probable cause standard applies to criminal contempt, Idaho Criminal Rule 42(c)(2) imposes an equivalent threshold requirement: nonsummary contempt proceedings must be commenced by a motion and affidavit showing the facts constituting the alleged contempt. This requirement ensures that, before issuing an order to show cause or proceeding further, the court first determines whether the affidavit alleges facts which, if true, would constitute contempt as defined in Idaho Code section 7-601. In substance, this inquiry mirrors the probable cause determination required before prosecution of any other criminal offense. *See State v. Smith*, 175 Idaho 635, ___, 569 P.3d 137, 144 (2025) ("Probable cause requires less than a preponderance of the evidence and is based on the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians,

act." (citation modified)). Thus, a court considering a motion for nonsummary criminal contempt must determine whether the supporting affidavit establishes probable cause before the proceeding may advance. Applying this standard, we conclude that the district court correctly analyzed whether Lutz's allegations established probable cause to believe that Heslington committed contempt. *See Bagwell*, 512 U.S. at 826.

While Idaho Criminal Rule 42 governs the procedures for initiating and adjudicating nonsummary criminal contempt proceedings, Idaho Code section 7-601 defines the conduct constituting contempt. Lutz's motion for contempt was based on subsections (3) and (4):

> The following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:
>
> . . . .
>
> 3. Misbehavior in office or other willful neglect or violation of duty by an attorney, counsel, clerk, sheriff, coroner or other person appointed or elected to perform a judicial or ministerial service.
>
> 4. Deceit or abuse of the process or proceedings of the court by a party to an action or special proceeding.

I.C. § 7-601(3), (4).

Lutz's motion was based on her assertion that Heslington included false information in a police report. The district court examined the facts alleged by Lutz and determined that no court order had been violated and that Heslington's alleged conduct occurred outside the judicial process:

> I do not believe -- or I do not find that there is probable cause in this charge itself that the alleged conduct, which has not been determined, was a duty of the sheriff, or a violation of that duty of the sheriff, while performing a judicial and a ministerial service.
>
> Likewise, under [subsection] 4, deceit or abuse of the process and proceedings of the court by a party to an action or a special proceeding. Again, talking about the process or proceedings of the court, not the criminal investigation process.
>
> A reading otherwise would allow me to even potentially find people in contempt for things well beyond even charges. And filing that police report in the creation, thereof, it was not pursuant to any directive order or other requirement of this [c]ourt, so the [c]ourt cannot find that the sheriff may be in violation, nor would a jury be able to find that the sheriff was in violation of those requirements.

The district court's conclusions align with long-standing Idaho precedent that a finding of contempt must rest upon the violation of a lawful court order. *See State v. Garcia*, 159 Idaho 6,

12, 355 P.3d 635, 641 (2015) (explaining that contempt proceedings under Idaho Criminal Rule 42, "are not predicated upon the violation of a statute; rather, they are predicated upon the violation of a court order or decree"). Indeed, "[c]ontempt is an extraordinary proceeding, and to invoke this proceeding there *must* be a court order which has been violated." *Phillips v. Dist. Ct. of Fifth Jud. Dist.*, 95 Idaho 404, 405, 509 P.2d 1325, 1326 (1973) (emphasis added) (footnote omitted). There was no such order here.

Nor does the record demonstrate conduct constituting "misbehavior in office" under Idaho Code section 7-601(3), which applies only to officers performing judicial or ministerial functions under the court's authority. A law enforcement officer investigating a report of criminal activity is not performing a judicial or ministerial function. Thus, a law enforcement investigation is therefore not a judicial or ministerial function subject to section 7-601(3). Accordingly, the district court correctly concluded that Lutz's allegations did not describe contemptuous conduct under Idaho Code section 7-601. Without evidence that Heslington violated a specific judicial directive or obstructed the administration of justice, the court lacked a legal or factual basis to find probable cause.

There is also nothing in the record to support probable cause that Heslington abused the process or proceedings *of the court* during his investigation. Thus, there was no probable cause that Heslington violated Idaho Code section 7-601(4). *See Camp*, 137 Idaho at 862, 55 P.3d at 316 ("Criminal contempt is the commission of a disrespectful act directed at the court itself which obstructs justice. A criminal contempt proceeding is maintained solely and simply to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court." (quoting 17 AM. JUR. 2d *Contempt* § 8 (1990)).

At bottom, the district court's ruling reflects a proper application of Idaho Criminal Rule 42 and Idaho Code section 7-601. Because Lutz's motion did not allege facts showing probable cause that Heslington violated a court order or otherwise abused the judicial process, the district court was correct to conclude that there was not probable cause to support criminal contempt and Lutz's motion was properly denied.

**B.     The district court erred by dismissing Lutz's motion for nonsummary contempt for lack of subject matter jurisdiction.**

Turning now to the jurisdictional issue, the parties disagree on whether a defendant can bring a nonsummary contempt proceeding in a criminal case. From Lutz's perspective, either party in a criminal action has standing to bring a contempt action. The district court disagreed,

concluding that, under this Court's decision in *Beck v. Elmore County Magistrate Court* (*Re: Petition for Writ of Prohibition*), 168 Idaho 909, 489 P.3d 820 (2021), "the defendant [does not have standing] to file a criminal non-summary contempt proceeding against a witness."

"There are two types of contempt proceedings: (1) summary contempt proceedings, which are based on conduct that occurs in the presence of the presiding judge, and (2) non-summary contempt proceedings, which are based on conduct that occurs outside of the court's presence." *Insure Idaho, LLC v. Horn*, ___ Idaho ___, ___, 572 P.3d 183, 192 (2025) (first citing I.R.C.P. 75(b), (c); and then citing I.R.C.P. 75(a)(4), (5)). Within this framework, contempt can be further categorized as either civil or criminal. *Id.* (citing *Camp*, 137 Idaho at 861, 55 P.3d at 315). "Importantly, this distinction is dictated by the nature of the sanction ultimately imposed . . . ." *Id.* at ___, 572 P.3d at 193 (citing *Camp*, 137 Idaho at 864, 55 P.3d at 318). A sanction is civil if it is conditional and designed to compel compliance; it is criminal if it is unconditional and punitive. *Id.*

Lutz's motion for nonsummary contempt proceedings against Heslington was brought under Idaho Criminal Rule 42. Rule 42 governs contempt proceedings brought in connection with criminal cases. *Beck*, 168 Idaho at 928, 489 P.3d at 839 (citing I.C.R. 42). The rule defines a "petitioner" as "the person or legal entity initiating a nonsummary contempt proceeding." I.C.R. 42(a)(1). Rule 42(c) further delineates how those nonsummary contempt proceedings are to be initiated:

> (2) *Motion and Affidavit.* All contempt proceedings, except those initiated by an order to show cause for the failure to appear in court, must be commenced by a motion and affidavit. The affidavit must allege the specific facts constituting the alleged contempt. Each instance of alleged contempt, if there is more than one, must be set forth separately. If the alleged contempt is the violation of a court order, the affidavit must allege that either the respondent or the respondent's attorney was served with a copy of the order or had actual knowledge of it. The affidavit need not allege facts showing that the respondent's failure to comply with the court order was willful.

I.C.R. 42(c)(2). Notably, Rule 42 does not state that *only* a prosecutor may initiate nonsummary criminal contempt proceedings. *See generally* I.C.R. 42.

Rather than rely on the scope of the definition of "petitioner" in Rule 42, the district court centered its ruling on its interpretation of this Court's decision in *Beck*. That case lies at the core of both parties' arguments on appeal. In *Beck*, Roxana Beck pleaded guilty to frequenting a place where controlled substances were used. 168 Idaho at 916, 489 P.3d at 827. After she failed to make

8

restitution payments that were ordered as part of her plea agreement, a deputy court clerk filed a motion and affidavit for contempt, and the magistrate judge issued a warrant for her arrest. *Id.* Beck later sought a writ of prohibition, challenging the magistrate court's jurisdiction to conduct contempt proceedings initiated by a *deputy clerk's* filing a motion and affidavit. *Id.* at 920, 489 P.3d at 831.

We concluded "that the magistrate court acted without jurisdiction in commencing contempt proceedings against Beck under Rule 42(c)(2)." *Id.* at 928, 489 P.3d at 839. In reaching that conclusion, we explained:

> Idaho Criminal Rule 42 governs contempt proceedings brought in connection with criminal proceedings. I.C.R. 42. For contempt committed outside the presence of the court, all proceedings, except for cases concerning contempt for failing to appear in court, "must be commenced by a motion and affidavit." I.C.R. 42(c)(2). The prosecution of all actions, applications, or motions within a county, whether civil or criminal, falls squarely within the duties of the appropriate prosecuting attorney where the state or county are parties or have an interest in a case. I.C. § 31-2604. As such, it is the prosecutor's responsibility to initiate contempt proceedings as described in Rule 42(c)(2).

*Id.* (emphasis omitted).

Heslington relied on the foregoing language to argue that only a prosecutor may initiate nonsummary contempt proceedings under Rule 42(c)—and the district court agreed. Both, however, misinterpreted our holding. Our decision in *Beck* should not be read as holding that only a prosecutor may initiate nonsummary contempt proceedings in a criminal case. Such a reading conflicts with Rule 42's definition of "petitioner," which expressly includes "legal entit[ies]." *See* I.C.R. 42(a)(1). Rather, our decision in *Beck* clarified that only a prosecutor may initiate contempt proceedings *on behalf of the state or county*. *See Beck*, 168 Idaho at 928, 489 P.3d at 839. The practical effect of our decision was, in part, to demonstrate how governmental contempt proceedings must be initiated so that judicial staff, such as deputy clerks, do not inadvertently engage in the unauthorized practice of law. *See id.* at 927–28, 489 P.3d at 838–39. We did not hold that *all* nonsummary contempt proceedings in a criminal case must be initiated by a prosecutor.

Today, we clarify that a "petitioner" under Rule 42 may include a criminal defendant who is a party to the underlying proceedings. Lutz, as a party to the criminal action, had standing to initiate nonsummary contempt proceedings. Because she properly invoked Rule 42, the district court possessed subject matter jurisdiction to commence nonsummary contempt proceedings.

**C.     We decline to consider whether the district court properly awarded fees to Heslington as the prevailing party.**

Curiously, Heslington raises an additional issue on appeal: whether the district court abused its discretion when it awarded *him* attorney fees. Heslington concedes that this issue was not raised by Lutz, but "requests that the Court affirm the decision of the district court[.]"

Idaho Appellate Rule 4 considers who may appeal a decision:

> Any party aggrieved by an appealable judgment, order or decree, as defined in these rules, of a district court, . . . may appeal such decision to the Supreme Court as provided in these rules.

I.A.R. 4.

As the prevailing party, Heslington cannot be an aggrieved party to the district court's award of attorney fees—Lutz was. Accordingly, we decline to consider the issue. In any event, our affirmance of the district court's judgment necessarily leaves undisturbed the attorney fee award, which Lutz did not appeal.

**D.     Heslington is not entitled to attorney fees.**

Heslington requests costs and fees under a series of provisions: Idaho Criminal Rule 42(m), Idaho Rule of Civil Procedure 54(d), Idaho Appellate Rule 40, and Idaho Code sections 7-610, 12-117, and 12-121.

Idaho Criminal Rule 42(m) provides that "[i]n any contempt proceeding, the court may award the prevailing party costs and reasonable attorney fees under Idaho Code [section] 7-610, regardless of whether the court imposes a civil sanction, a criminal sanction, or no sanction." Under Idaho Code section 12-117, this Court may award attorney fees when an appeal is brought without any basis in fact or law. I.C. § 12-117(1), (2). Under Idaho Code section 12-121 a court may award reasonable attorney fees when a case or appeal is "brought, pursued[,] or defended frivolously, unreasonably[,] or without foundation." This Court has held that an appeal which "merely invites the Court to second-guess the findings of the lower court" warrants an award of fees under Idaho Code section 12-121. *Millard v. Talburt*, 173 Idaho 533, 550, 544 P.3d 748, 765 (2024) (quoting *Erickson v. Erickson*, 171 Idaho 352, 371, 521 P.3d 1089, 1108 (2022)).

"[A]s a general rule, attorney fees are not awarded on appeal except pursuant to 'a statute or contractual provision authorizing an award of attorney fees on appeal.'" *Int'l Real Est. Sols., Inc. v. Arave*, 157 Idaho 816, 822, 340 P.3d 465, 471 (2014) (quoting *Ticor Title Co. v. Stanion*, 144 Idaho 119, 127, 157 P.3d 613, 621 (2007)). While Idaho Criminal Rule 42(m) and Idaho Code

section 7-610 provide for attorney fees in contempt proceedings, neither provides any authority for recovering attorney fees on appeal. Likewise, Idaho Code section 12-117 only applies to proceedings involving a state agency or political subdivision as an adverse party. Heslington is neither.

Lutz's appeal was not brought or pursued frivolously, unreasonably, or without foundation. Lutz advanced good faith legal arguments concerning who may initiate criminal contempt proceedings and successfully demonstrated that the district court erred in dismissing her motion for nonsummary contempt for lack of subject matter jurisdiction. Accordingly, an award of attorney fees on appeal is not warranted. However, because Heslington is the prevailing party, he is awarded costs. I.A.R. 40(a).

## V.  CONCLUSION

For the reasons above, the district court's second amended judgment of dismissal for nonsummary contempt and for attorney fees is affirmed. Costs on appeal, but not attorney fees, are awarded to Heslington.

Justices BRODY, MOELLER, ZAHN and MEYER concur.